Justice SOTOMAYOR, concurring.
The Employee Retirement Income Security Act of 1974 (ERISA) protects employees by ensuring " 'that if a worker has been promised a defined pension benefit upon retirement-and if he has fulfilled whatever conditions are required to obtain a vested benefit-he will actually receive it.' " Lockheed Corp. v. Spink, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Any decision interpreting the provisions governing which employers are subject to ERISA is ultimately a decision about which employees receive this assurance. Today, by holding that ERISA's exemption for "church plan[s]," 29 U.S.C. § 1003(b)(2), covers plans neither established nor maintained by a church, the Court holds that scores of employees-who work for organizations that look and operate much like secular businesses-potentially might be denied ERISA's protections. In fact, it was the failure of unregulated "church plans" that spurred cases such as these. See, e.g., Brief for Respondents 7-8 (collecting cases and press reports of church plan failures).
I join the Court's opinion because I am persuaded that it correctly interprets the relevant statutory text. But I am nonetheless troubled by the outcome of these cases. As the majority acknowledges, ante, at 1661, the available legislative history does not clearly endorse this result. That silence gives me pause: The decision to exempt plans neither established nor maintained by a church could have the kind of broad effect that is usually thoroughly debated during the legislative process and thus recorded in the legislative record. And to the extent that Congress acted to exempt plans established by orders of Catholic Sisters, see ibid., it is not at all clear that Congress would take the same action today with respect to some of the largest health-care providers in the country. Despite their relationship to churches, organizations such as petitioners operate for-profit subsidiaries, see Dignity Health and Subordinate Corporations, Consolidated Financial Statements as of and for Years ended June 30, 2016 and 2015 and Independent Auditors' Report, p. 50, https://emma.msrb.org/ES823341-ES646022-ES1041174.pdf (as last visited June 1, 2017); employ thousands of employees, App. 774; App. to Pet. for Cert. in No. 16-74, pp. 5a, 31a; earn billions of dollars in revenue, ibid. ; and compete in the secular market with companies that must bear the cost of complying with ERISA. These organizations thus bear little resemblance to those Congress considered when enacting the 1980 amendment to the church plan definition. This current reality might prompt Congress to take a different path.
In the end, I agree with the majority that the statutory text compels today's result. Other provisions also impact the scope of the "church plan" exemption. Those provisions-including the provisions governing which organizations qualify as principal purpose organizations permitted to establish and maintain "church plans,"
*1664 see, e.g.,ante, at 1658, n. 3-need also be construed in line with their text and with a view toward effecting ERISA's broad remedial purposes.